UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

STEVEN NACHSHEN                                                    **CV**

                                    Plaintiff,

          -against-                                               **COMPLAINT**

TISHMAN SPEYER PROPERTIES, L.P., RCPI
LANDMARK PROPERTIES, LLC AND TOP OF                               **JURY TRIAL REQUESTED**
THE ROCK LLC

                                    Defendants.
-------------------------------------------------------------x

<u>**COMPLAINT**</u>

Plaintiff Steven Nachshen (hereafter referred to as "plaintiff"), by counsel, Parker Hanski

LLC, as and for the Complaint in this action against Defendants Tishman Speyer Properties,

L.P., RCPI Landmark Properties, LLC and Top of the Rock LLC (together referred to as

"defendants"), hereby alleges as follows:

<u>**NATURE OF THE CLAIMS**</u>

1.       This lawsuit opposes pervasive, ongoing and inexcusable disability discrimination

by the defendants.  In this action, plaintiff seeks declaratory, injunctive and equitable relief, as

well as monetary damages and attorneys' fees, costs and expenses to redress defendants'

unlawful disability discrimination against plaintiff, in violation of Title III of the Americans with

Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations, the New

York State Executive Law (the "Executive Law"), § 296, New York State Civil Rights Law, §

40, and the Administrative Code of the City New York (the "Administrative Code"), § 8-107.

Plaintiff also alleges claims for Negligence.  As explained more fully below, defendants own,

lease, lease to, operate and control a place of public accommodation that violates the above-

mentioned laws.  Each of the defendants is vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.      These defendants made a financial decision to ignore and violate the explicit legal requirements for making their places of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught.  In so doing, defendants made a calculated, but unlawful, decision that disabled customers are not worthy.  The day has come for defendants to accept responsibility.  This action seeks to right that wrong via recompensing plaintiff and making defendants' places of public accommodation fully accessible so that plaintiff can finally enjoy the full and equal opportunity that defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of plaintiff's rights under the ADA.  The Court has supplemental jurisdiction over plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because defendants' acts of discrimination alleged herein occurred in this district and defendants' place of public accommodation that is the subject of this action is located in this district.

## PARTIES

5.      At all times relevant to this action, plaintiff Steven Nachshen has been and remains currently a resident of the State and City of New York.

6.      At all times relevant to this action, plaintiff Steven Nachshen has been and

remains a wheelchair user.  Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

7.     Defendant RCPI Landmark Properties, LLC is a Delaware limited liability company with its principal place of business at 45 Rockefeller Plaza, 630 Fifth Avenue, 12th Floor, New York, New York 10111.

8.     Defendant Top of the Rock LLC is a Delaware limited liability company  with its principal place of business at 45 Rockefeller Plaza, 630 Fifth Avenue, 12th Floor, New York, New York 10111.

9.     Defendants RCPI Landmark Properties, LLC and Top of the Rock LLC are related companies under the common control of defendant Tishman Speyer Properties, LP, a building development and management company.

10.     Defendants Tishman Speyer Properties, L.P. and RCPI Landmark Properties, LLC own the property located at 45 Rockefeller Plaza in New York County, New York (hereinafter referred to as "45 Rockefeller Plaza").

11.     Each of the defendants Tishman Speyer Properties, L.P. and RCPI Landmark Properties, LLC are licensed to and do business in New York State.  Defendant Top of the Rock LLC is licensed to do and does business in New York State.

12.     At all relevant times, defendant Top of the Rock LLC operates and/or leases property located at 45 Rockefeller Plaza from defendants Tishman Speyer Properties, L.P. and RCPI Landmark Properties, LLC (hereinafter referred to as the "Top of the Rock" premises).

13.     Upon information and belief, Tishman Speyer Properties, L.P. and RCPI Landmark Properties, LLC and Top of the Rock LLC have a written lease agreement.

14.     Defendant RCPI Landmark Properties, LLC is the owner of 12 buildings

located on six square blocks bordered by Fifth Avenue, the Avenue of the Americas, 48th Street and 51st Street, an area commonly referred to as Rockefeller Center.

15.     A symbol of art, commerce, and entertainment, defendant RCPI Landmark Properties, LLC's Rockefeller Center has been a major destination in New York for tourists and locals alike for decades.

16.     Since RCPI's predecessor in interest first acquired an interest in Rockefeller Center in 1996, RCPI has spent more than $200 million to improve and modernize the 5.8 million square feet of office space and 750,000 square feet of retail space that make up Rockefeller Center.

17.     Defendant Top of the Rock LLC owns and operates the observation floors/decks located on the 67th to 69th Floors of 30 Rockefeller Plaza branded under the name Top Of The Rock.

18.     The Top of The Rock premises opened to the public on November 1, 2005.

19.     RCPI and related companies spent more than one million dollars in connection with refurbishing the Top of The Rock premises and opening it to the public.

20.     Defendants have since spent hundreds of thousands of dollars promoting the Top of The Rock premises.

21.     The Top of The Rock premises offers visitors 360 degree views of Manhattan that are unlike any other offered by any public observation deck in Manhattan because they are not obscured by protective fencing or other security devices, due to the unique layered architecture of 30 Rockefeller Plaza.  These unobstructed views are especially inviting because of the photographic opportunities they offer.

22.     Public access to the Top of The Rock premises is by ticket only.  A ticket grants

4

the holder the right of access subject to the terms and conditions specified on the ticket. Since it opened to the public, there have been more than 3 million visitors.

23.     In 2015, plaintiff visited the Top of The Rock premises.

24.     Upon arriving at the main observation level on the 67th floor, plaintiff noticed that the viewing machines were inaccessible because, for among other reasons, the viewing lenses were too high and the base of the viewing machine prevented plaintiff's wheelchair from getting close to the viewing lenses.

25.     Wheelchair accessible viewing machines exist and defendants could have easily installed them at any time on or before the Top of The Rock premises opened in 2005. See http://www.seecoast.com/bases.php or http://www.hispyviewing.com/wheelchair-ada-viewers/

26.     Because the viewing machines were inaccessible, plaintiff asked an employee for binoculars as a reasonable accommodation in order to attempt to have the same observation experience as nondisabled visitors. The employee responded that the defendants do provide binoculars to visitors but that plaintiff could not have a binoculars because he had not purchased a VIP premium ticket.

27.     Plaintiff also noticed that the path of travel provided for visitors to go to the 68th and 69th floors was via stairs that visitors can independently travel to and from those floors without obstructions.

28.     While the defendants provide an elevator to access the 68th and 69th floors, the path of travel to the elevators for those floors is obstructed by a rope with an employee standing guard. In order for plaintiff to utilize the elevators, the defendants required that plaintiff be chaperoned by an employee in the elevators to and from the other observation floors. Plaintiff had to wait almost 15 minutes for an employee to chaperone him in the elevator while

nondisabled visitors did not have to wait at all.  It is important to note that the defendants

impose this elevator chaperone requirement for the disabled despite the fact that defendants do

not require visitors to be chaperoned by an employee when they take one of the elevators going

to or from the main observation deck on the 67th floor.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

29.     Each of the defendants is a public accommodation as they own, lease, lease to,

control or operate a place of public accommodation, the Top of the Rock premises located at 45

Rockefeller Plaza, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104),

the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)).

30.     45 Rockefeller Plaza is a commercial facility within the meaning of the ADA and

subject to the requirements of 42 U.S.C. § 12183.

31.     The Top of the Rock premises is a place of public accommodation within the

meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9))

and the Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity as a retail

establishment, and its operations affect commerce.

32.     Numerous architectural barriers exist at defendants' place of public

accommodation that prevent and/or restrict access to plaintiff, a person with a disability.

33.     At numerous times after January 1992, Tishman Speyer Properties, L.P. and RCPI

Landmark Properties, LLC made alterations to 45 Rockefeller Plaza, including areas adjacent

and/or attached to 45 Rockefeller Plaza.

34.     At numerous times after January 1992, defendants Tishman Speyer Properties,

L.P. and/or RCPI Landmark Properties, LLC made alterations to the Top of the Rock premises,

and to areas of 45 Rockefeller Plaza related to the Top of the Rock premises.

35.     At some time after January 1992, defendants altered the primary function areas of the Top of the Rock premises and 45 Rockefeller Plaza that relate to the Top of the Rock premises.

36.     Since the effective date of § 27-292 of the Administrative Code (also known as "Local Law 58"), defendants have constructed and/or made alterations to the Top of the Rock premises, and to areas of 45 Rockefeller Plaza related to the Top of the Rock premises.

37.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards").

38.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Administrative Code § 27-292 *et. seq.*

39.     Because of defendants' failure not to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, plaintiff was and has been unable to enjoy safe, equal and complete access to defendants' place of public accommodation.

40.     Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the Administrative Code, or the Building Code of the City of New York ("BCCNY").

41.     In addition to all the discrimination identified herein, barriers to access that plaintiff encountered and/or which exist at the defendants' place of public accommodation include, but are not limited to, the barriers identified below:

**Inaccessible Viewing Machines**

I.   Defendants fail to provide that operable parts of the viewing machines on the 67th Floor are within accessible reach ranges. See 1991 Standards 4.2.5 and 4.2.6; 2010 Standards 308.1; and BCCNY ANSI/A117.1 -2003 308.1.

II.  Defendants fail to provide the minimum required maneuvering clearances of level and clear space for an accessible path of travel to and from the viewing machines on the 67th, 68th, and 69th floors as they all have obstructions at the base preventing a wheelchair user from effectively utilizing the machines.  See 1991 Standards §§ 4.2.4, 4.3, 4.2, 5.8; and 2010 Standards §§ 305, 305.3, 305.5, 305.6, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

**Inaccessible Entrance**

III.  At the designated accessible entrance, defendants fail to provide and display the International Symbol of Accessibility at the proper height and location.  See 1991 Standards §§ 4.1.3(d); and 2010 Standards § 216.6 and 703.4.

IV.   Defendants fail to provide the operable controls for the automatic door within an accessible reach range and path of travel because it is obstructed by a standpipe and concrete planter.  See 1991 Standards 4.13.2; and 2010 Standards 404.2.1.

V.    At the designated accessible entrance door, Defendants fail to provide level maneuvering clearances without any changes in level.  See 1991 Standards 4.13.6; 2010 Standards 404.2.4.4; and BCNYC ANSI/A117.1 -2003 404.2.3.

VI.   At the designated accessible entrance door, defendants fail to provide maneuvering clearances for a forward approach where any obstruction within 18 inches of the latch side of the doorway projects more than 8 inches beyond the face of the door. See 1991 Standards 4.13.6; 2010 Standards 404.2.4.3; and BCNYC ANSI/A117.1 -2003 404.2.3.4.

VII.  Defendants fail to provide an accessible public entrance. See 1991 Standards 4.1.3(8); 2010 Standards 206.4; and BCCNY 1105.

VIII. Defendants fail to provide that at least 50% of all its public entrances are accessible.  See 1991 Standards 4.1.3.8(a)(i).

IX. Defendants fail to provide that at least 60% of all its public entrances are accessible.  See 2010 Standards 206.4.1.

X. Defendants fail to provide that ALL of its public entrances are accessible. See BCCNY 1105.1

XI. Defendants fail to provide accessible means of egress in the number required by the code. See 1991 Standards 4.1.3(9); 2010 Standards 207.1; and BCCNY 1007.1.

**Inaccessible Routes**

XII. Defendants fail to provide an accessible route to each portion of the building that connects to accessible building entrances. See 1991 Standards 4.1.2(2); 2010 Standards 206.2.4; and BCCNY 1104.3.

XIII. Defendants fail to provide an independent and accessible route to each level and mezzanine required to be accessible. See 1991 Standards 4.1.3(5); 2010 Standards 206.2.3; and BCCNY 1104.4.

XIV. At entrance doors, Defendants fail to provide a door that requires less than eight and one half pounds of force to open.  Any door so heavy that it prevents entrance by people with disabilities may deny them access to goods and services, which is covered under the ADA. See 1991 Standards 4.1.1(1); and 2010 Standards 201.1.

XV. At interior doors, Defendants fail to provide doors that require less than five pounds of force to open.  See 1991 Standards 4.13.11; 2010 Standards 404.2.9; and BCCNY ANSI/A117.1 -2003 404.2.8.

XVI. On the second floor where the elevators travelling to the 67th floor are located, defendants fail to provide running slopes of the interior ramps are not steeper than 1:12 (8.33%). See 1991 Standards 4.8.2; 2010 Standards 405.2; and BCCNY ANSI/A117.1 -2003 405.2.

XVII. On the second floor where the elevators travelling to the 67th floor are located, defendants fail to provide cross slopes that are not steeper than 1:48 (2.0%). See 1991 Standards 4.8.2; 2010 Standards 405.3; and BCCNY ANSI/A117.1 -2003 405.3.

XVIII. Defendants fail to provide a 30 inches maximum rise at ramps. See 1991 Standards 4.8.2; 2010 Standards 405.6; and BCCNY ANSI/A117.1 -2003 405.6.

XIX. Defendants fail to provide landings with slopes not steeper than 1:48 (2.0%) at ramps. See 1991 Standards 4.8.4; 2010 Standards 405.7.1; and BCCNY ANSI/A117.1 -2003 405.7.1.

XX. Defendants fail to provide handrails that have ends that are either rounded or returned smoothly to floor, wall, or post at ramps.  See 1991 Standards 4.8.5(6); 2010 Standards 505.6; and BCCNY ANSI/A117.1 -2003 505.6.

XXI.  Defendants fail to provide the required handrail extensions at ramps. See 1991 Standards 4.8.5(2); 2010 Standards 505.10.1; and BCCNY ANSI/A117.1 -2003 505.10.1.

**<u>Inaccessible Toilet Facilities</u>**

XXII.  Defendants fail to provide accessible toilet facilities.  See 1991 Standards 4.1.3(11); 2010 Standards 213.1; and BCCNY 1109.2.

XXIII.  Defendants fail to provide that each toilet room is accessible. See 1991 Standards 4.1.3(11); 2010 Standards 213.2; and BCCNY 1109.2.

XXIV.  Defendants fail to provide at least one accessible bathing facility. See 1991 Standards 4.23.8; 2010 Standards 213.3.6; and BCCNY 1109.2.

XXV.  Defendants fail to provide an accessible route to and from accessible toilet and bathing facilities.  See 1991 Standards 4.1.2(2); 2010 Standards 206.2.2; and BCCNY 1104.3.

XXVI.  Defendants fail to provide the required turning space within accessible toilet and bathing facilities. See 1991 Standards 4.23.3; 2010 Standards 603.2.1; and BCCNY ANSI/A117.1 -2003 603.2.1.

XXVII.  Defendants fail to provide a clear floor space of 30 inches by 48 inches beyond the swing of the door within accessible toilet and bathing facilities. See 1991 Standards 4.23.2 and 4.23.3; 2010 Standards 603.2.3; and BCCNY ANSI/A117.1 -2003 603.2.3.

XXVIII.  Defendants fail to provide at least one accessible water closet. See 1991 Standards 4.23.4; 2010 Standards 213.3.2; and BCCNY 1109.2.

XXIX.  Defendants fail to provide at least one accessible toilet compartment. See 1991 Standards 4.23.4; 2010 Standards 213.3.1; and BCCNY 1109.2.2.

XXX.  Defendants fail to provide an accessible route to and from accessible water closets and/or toilet compartment.  See 1991 Standards 4.1.2(2); 2010 Standards 206.2.2; and BCCNY 1104.3.

XXXI.  Defendants fail to provide a clearance around the accessible water closet that is 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. See 2010 Standards 604.3.1; and BCCNY ANSI/A117.1 -2003 604.3.1.

XXXII.  Defendants fail to provide an accessible water closet with a rear wall grab bar that is 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 Standards 4.16.4; 2010 Standards 604.5.2; and BCCNY ANSI/A117.1 -2003 604.5.2.

XXXIII.   Defendants fail to provide an accessible toilet compartment that is 60 inches wide minimum measured perpendicular to the side wall, and 56 inches deep minimum for wall hung water closets. See 1991 Standards 4.17.3; 2010 Standards 604.8.1.1; and BCCNY ANSI/A117.1 -2003 604.8.2.

**Inaccessible Urinals**

XXXIV.   Defendants fail to provide at least one accessible urinal. See 1991 Standards 4.23.5; and BCCNY 1109.2.

XXXV.   Defendants fail to provide an accessible route to and from urinals.  See 1991 Standards 4.1.2(2); 2010 Standards 206.2.2; and BCCNY 1104.3.

XXXVI.   Defendants fail to provide accessible urinals with a clear floor space of 30 inches by 48 inches positioned for a forward approach. See 1991 Standards 4.18.3 and 4.24.5; 2010 Standards 605.3; and BCCNY ANSI/A117.1 -2003 605.3.

XXXVII.   Defendants fail to provide an accessible route to and from accessible lavatories and/or sinks.  See 1991 Standards 4.1.2(2); 2010 Standards 206.2.2; and BCCNY 1104.3.

XXXVIII.   Defendants fail to provide accessible lavatories and/or sinks with a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance. See 1991 Standards 4.19.3 and 4.24.5; 2010 Standards 606.2; and BCCNY ANSI/A117.1 -2003 606.2.

XXXIX.   On the second floor, defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 Standards 4.19.4 and 4.24.6; 2010 Standards 606.5; and BCCNY ANSI/A117.1 -2003 606.6.

XL.   On the second floor, defendants fail to provide accessible lavatories and/or sinks with no sharp or abrasive surfaces. See 1991 Standards 4.19.4 and 4.24.6; 2010 Standards 606.5; and BCCNY ANSI/A117.1 -2003 606.6.

XLI.   Defendants fail to provide at least one accessible coat hook and/or shelf within accessible toilet and bathing facilities. See 1991 Standards 4.23.7; 2010 Standards 213.3.7; and BCCNY 1109.2.

42.   Upon information and belief, a full inspection of the defendants' place of public accommodation will reveal the existence of other barriers to access.

43.   As required by the ADA (remedial civil rights legislation) to properly

remedy defendants' discriminatory violations and avoid piecemeal litigation, plaintiff requires a full inspection of the defendants' public accommodation in order to catalogue and cure all of the areas of non-compliance with the ADA.  Notice is therefore given that plaintiff intends on amending the Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

44.     Defendants have endangered plaintiff's safety and denied plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

45.     Defendants' failure to make their place of public accommodation accessible denies plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

46.     Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws.  Nor have defendants made or provided reasonable accommodations or modifications to persons with disabilities.

47.     Defendants Tishman Speyer Properties, L.P. and RCPI Landmark Properties, LLC have failed to ensure that their lessee's place of public accommodation and the elements therein are in compliance with the 1991 Standards or the 2010 Standards; the Administrative Code, and the BCCNY including but not limited to ensuring the maintenance of accessible features.

48.     The barriers to access within defendants' place of public accommodation continue to exist.

49.     Plaintiff has a realistic, credible and continuing threat of discrimination from the defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within defendants' place of public accommodation continue to exist and deter plaintiff.

50.     Plaintiff frequently travels to the shopping area and neighborhood where defendants' place of public accommodation is located and patronizes places in the neighborhood.

51.     Plaintiff intends to patronize the defendants' place of public accommodation at least once a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY.

52.     Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether defendants' place of public accommodation is fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY.

53.     Plaintiff intends to patronize the defendants' place of public accommodation as a "tester" to monitor, ensure, and determine whether defendants' place of public accommodation is fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY – all for the benefit of those similarly situated to plaintiff.

## FIRST CAUSE OF ACTION
### (Violations of the Americans with Disabilities Act)

54.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of plaintiff's disability, plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

55.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

56.     Under the ADA, both the property owner and lessee are liable to the plaintiff and neither can escape liability by transferring their obligations to the other by contract (i.e. lease agreement).  28 C.F.R. 36.201(b).

57.     Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use their place of public accommodation all because plaintiff is disabled.  Defendants' policies and practices have disparately impacted plaintiff as well.

58.     By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

59.     Defendants have discriminated against the plaintiff by designing and constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

60.     Defendants' place of public accommodation is not fully accessible and fails to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

61.     Upon making alterations to their public accommodation, defendants failed to make their place of public accommodation accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

62.     Upon making these alterations to the primary function areas, defendants failed to make the paths of travel to the primary function areas accessible to plaintiff, in violation of 28 C.F.R. § 36.403.

63.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make defendants' place of public accommodation fully accessible.

64.     By failing to remove the barriers to access where it is readily achievable to do so, defendants have discriminated against plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

65.     In the alternative, defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

66.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

67.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, within the meaning of the ADA, Tishman Speyer Properties, L.P. and RCPI Landmark Properties, LLC continuously controlled, managed and operated the public sidewalk abutting 45 Rockefeller Plaza, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

68.     Tishman Speyer Properties, L.P. and RCPI Landmark Properties, LLC's failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the ADA.

69.     Defendants have and continue to discriminate against plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

<u>**SECOND CAUSE OF ACTION**</u>
**(Violation of New York State Executive Law)**

70.     Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

71.     Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

72.     Defendants' have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their place of public accommodation all because plaintiff is disabled.

73.     Defendants discriminated against plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the defendants have aided and abetted others in committing disability discrimination.

74.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

75.     In the alternative, defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

76.     It would be readily achievable to make defendants' place of public accommodation fully accessible.

77.     It would not impose an undue hardship or undue burden on defendants to make their place of public accommodation fully accessible.

78.     As a direct and proximate result of defendants' unlawful discrimination in violation of New York State Executive Law, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

79.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Violation of the Administrative Code of the City of New York)

80.     Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

81.     Plaintiff suffers from various medical conditions that separately and together, impair plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus plaintiff has a disability within the meaning of the Administrative Code § 8-102(16).

82.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law.  The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

17

Restoration Act § 7 amending Administrative Code §8-130 (emphasis added). The
Restoration Act is to be construed broadly in favor of plaintiff to the fullest extent possible.

83.     Defendants' have and continue to subject plaintiff to disparate treatment and
disparate impact by directly and indirectly refusing, withholding, and denying the
accommodations, advantages, facilities, and privileges of their place of public accommodation
all because of disability in violation of the Administrative Code § 8-107(4).  Each of the
defendants have aided and abetted others in committing disability discrimination.

84.     Defendants have discriminated, and continue to discriminate, against plaintiff in
violation of the Administrative Code § 8-107(5)(b) by designing, creating and/or maintaining an
inaccessible commercial facility/space.

85.     Defendants have subjected, and continue to subject, plaintiff to disparate
treatment by directly and indirectly refusing, withholding, and denying the accommodations,
advantages, facilities, and privileges of their commercial facility/space all because of disability
in violation of the Administrative Code § 8-107(5)(b).

86.     In violation of Administrative Code § 8-107(6), defendants have and continue to,
aid and abet, incite, compel or coerce each other in each of the other defendants' attempts to,
and in their acts of directly and indirectly refusing, withholding, and denying the
accommodations, advantages, facilities, and privileges of their commercial facility/space and
the place of public accommodation therein, all because of disability, as well as other acts in
violation of the Administrative Code.

87.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the
property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a
result, Tishman Speyer Properties, L.P. and RCPI Landmark Properties, LLC continuously

controlled, managed and operated the public sidewalk abutting 45 Rockefeller Plaza, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

88.     Tishman Speyer Properties, L.P. and RCPI Landmark Properties, LLC's failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

89.     Defendants discriminated against plaintiff in violation of the Administrative Code, § 8-107(4), and Local Law 58 by maintaining and/or creating an inaccessible public accommodation.

90.     As a direct and proximate result of defendants' unlawful discrimination in violation of the Administrative Code, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, embarrassment, and anxiety.

91.     Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to plaintiff's rights under the Administrative Code.

92.     By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

93.     Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff is entitled to an award of punitive damages.  Administrative Code § 8-502.

94.     By refusing to make their place of public accommodation accessible, defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

95.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Violation of New York State Civil Rights Laws)

96.     Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

97.     Defendants discriminated against plaintiff pursuant to New York State Executive Law.

98.     Consequently, plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each and every barrier and violation.

99.     Notice of the defendants' violations and this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## FIFTH CAUSE OF ACTION
### (COMMON LAW NEGLIGENCE)

100.    Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

101.    Defendants negligently designed, constructed, operated, repaired and maintained their place of public accommodation located at 45 Rockefeller Plaza in a manner that has rendered their place of public accommodation unsafe to the disabled plaintiff.

20

102.     At all relevant times, defendants, who hold their property open to the public, have had a duty to patrons such as plaintiff to design, construct, operate, repair, and maintain their place of public accommodation located at 45 Rockefeller Plaza in a reasonably safe condition, including a duty to comply with the Administrative Code.

103.     Defendants breached their duty by negligently designing, constructing, operating, repairing and maintaining their place of public accommodation located at 45 Rockefeller Plaza in a manner that has unreasonably endangered the plaintiff's physical safety and caused plaintiff to fear for plaintiff's own safety.

104.     Defendants' failure to design, construct, operate, repair and maintain their place of public accommodation located at 45 Rockefeller Plaza in a manner that is safe to the disabled plaintiff has proximately caused plaintiff emotional distress.

105.     Defendants have had actual and constructive notice that their place of public accommodation located at 45 Rockefeller Plaza is not safe to the disabled.

106.     As a direct result of defendants' negligence, plaintiff has suffered and continues to suffer emotional distress damages in an amount to be determined at trial.

## INJUNCTIVE RELIEF

107.     Plaintiff will continue to experience unlawful discrimination as a result of defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order defendants to alter and modify their place of public accommodation and their operations, policies, practices and procedures.

108.     Injunctive relief is also necessary to make defendants' facilities readily accessible to and usable by plaintiff in accordance with the above-mentioned laws.

109.     Injunctive relief is further necessary to order defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, Executive Law and the Administrative Code.

## DECLARATORY RELIEF

110.     Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by defendants against plaintiff and as to required alterations and modifications to defendants' place of public accommodation, facilities, goods and services, and to defendants' policies, practices, and procedures.

## ATTORNEYS' FEES, EXPENSES AND COSTS

111.     In order to enforce plaintiff's rights against the defendants, plaintiff has retained counsel and is entitled to recover attorneys' fees, expenses and costs pursuant to the ADA and the Administrative Code.  42 U.S.C. §12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter a judgment against the defendants, jointly and severally, in favor of plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that defendants' have violated the ADA and its implementing regulations, Executive Law and Administrative Code and declaring the rights of plaintiff as to defendants' place of public accommodation, and defendants' policies, practices and procedures;

B.   Issue a permanent injunction ordering **defendants to close and cease all business** until defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, Executive Law and Administrative Code, including but not limited to the violations set forth above;

C.   Retain jurisdiction over the defendants until the Court is satisfied that the defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D.   Award plaintiff compensatory damages as a result of defendants' violations of New York State Executive Law and the Administrative Code of the City of New York;

E.   Award plaintiff punitive damages in order to punish and deter the defendants for their violations of the Administrative Code of the City of New York;

F.   Award plaintiff monetary damages for each and every barrier and violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G.   Award reasonable attorneys' fees, costs and expenses pursuant to the Administrative Code;

H.   Find that plaintiff is a prevailing party in this litigation and award reasonable attorneys' fees, costs and expenses pursuant to the ADA; and

I.   For such other and further relief, at law or in equity, to which plaintiff may be justly entitled.

Dated: February 10, 2016
      New York, New York

              Respectfully submitted,

              **PARKER HANSKI LLC**

              By:_____/s_____
                 Glen H. Parker, Esq.
                 Adam S. Hanski, Esq.

Robert G. Hanski, Esq.
Attorneys for Plaintiff
40 Worth Street, 10th Floor
New York, New York 10013
Telephone: (212) 248-7400
Facsimile: (212) 248-5600
Email:ash@parkerhanski.com
Email:ghp@parkerhanski.com
Email:rgh@parkerhanski.com